UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JEREMY A. LANGLEY, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) **COMPLAINT FOR VIOLATION OF** ) **THE FEDERAL SECURITIES LAWS** ) |
| v. | ) **DEMAND FOR JURY TRIAL** ) |
| BOOZ ALLEN HAMILTON HOLDING CORPORATION, HORACIO D. ROZANSKI, and LLOYD W. HOWELL JR., | ) ) ) ) ) |
| Defendants. | ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Jeremy A. Langley ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through hisattorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Booz Allen Hamilton Holding Corporation ("Booz Allen" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Booz Allen securities between May 19, 2016 and June 15, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Booz Allen is an American management consulting firm.  The Company purports to provide management and technology consulting, engineering, analytics, digital, mission operations, and cyber solutions to governments, corporations, and not-for-profit organizations in the United States and internationally.  At all relevant times, Booz Allen has derived substantially all of its revenues from services provided to the U.S. government.

3.      Founded in 1914, Booz Allen is headquartered in McLean, Virginia. The Company's Securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "BAH".

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Booz Allen engaged in improper accounting practices in its contracts with the U.S. government; (ii) consequently, the Company's revenues derived from services provided to the U.S. government were inflated and unsustainable; (iii) discovery of the foregoing conduct would subject the Company to heightened regulatory scrutiny, potential criminal sanctions, and jeopardize its

business relationship with the U.S. government; and (iv) as a result of the foregoing, Booz Allen's public statements were materially false and misleading at all relevant times.

5.      On June 15, 2017, post-market, Booz Allen disclosed that on June 7, 2017, the Company's subsidiary Booz Allen Hamilton Inc. "was informed that the U.S. Department of Justice is conducting a civil and criminal investigation relating to certain elements of [its] cost accounting and indirect cost charging practices with the U.S. government."

6.      On this news, Booz Allen's share price fell $7.43, or 18.89%, to close at $31.90 on June 16, 2017.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.     Venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. § 1391(b).   Booz Allen's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Booz Allen Securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Booz Allen is incorporated in Delaware.  The Company's principal executive offices are located at 8283 Greensboro Drive, McLean, Virginia 22102.  Booz Allen's common stock trades on the NYSE under the ticker symbol "BAH".

14.     Defendant Horacio D. Rozanski ("Rozanski") has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Director.

15.     Defendant Lloyd W. Howell Jr. ("Howell") has served at all relevant times as the Company's Chief Financial Officer ("CFO"), Executive Vice President and Treasurer.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Booz Allen is an American management consulting firm.  The Company purports to provide management and technology consulting, engineering, analytics, digital, mission operations, and cyber solutions to governments, corporations, and not-for-profit organizations in the United States and internationally.  At all relevant times, Booz Allen has derived the majority of its revenues from services provided to the U.S. government.

### Materially False and Misleading Statements Issued During the Class Period

18.     The Class Period begins on May 19, 2016, when Booz Allen filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended March 31, 2016 (the "2016 10-K").  For the quarter, Booz Allen reported net income of $65.52 million, or $0.43 per diluted share, on revenue of $1.42 billion, compared to net income of $43.36 million, or $0.29 per diluted share, on revenue of $1.34 billion for the same period in the prior year.  For the fiscal year, Booz Allen reported net income of $294.09 million, or $1.94 per diluted share, on revenue of $5.41 billion, compared to net income of $232.57 million, or $1.52 per diluted share, on revenue of $5.27 billion for the prior fiscal year.

19.     In the 2016 10-K, Booz Allen stated, in part:

Through our dedication to our clients' missions, and a commitment to evolving our business to address client needs, we have longstanding and deep relationships with our clients -- some more than 75 years. ***We support critical missions for a diverse base of federal government clients, including nearly all of the U.S. government's cabinet-level departments, and federal contract vehicles, as well as increasingly for top-tier commercial and international clients.*** We support these clients by addressing complex and pressing challenges such as combating global terrorism, improving cyber capabilities, transforming the healthcare system, improving efficiency and managing change within the government.

. . .

**Our Clients**

Through our commitment to client success, we have fostered strong client relationships with a diverse client base of government, commercial, and international clients. We believe that the U.S. government is the world's largest consumer of management and technology consulting services. The U.S. government's budget for the fiscal year ended September 30, 2015 was close to $3.9 trillion, excluding authorizations from Overseas Contingency Operations and supplemental funding for the Department of Defense. Of this amount, approximately $1.1 trillion was for discretionary budget authority, including $623 billion for the Department of Defense and Intelligence Community and $563 billion for civil agencies. Based on data from the Federal Procurement Data System, approximately $438 billion of the U.S. government's fiscal year 2015 discretionary outlays were non-intelligence agency funding-related products and

services procured from private contractors. We estimate that $112 billion of the spending directed towards private contractors in U.S. government fiscal year 2015 was for management, technology, and engineering services, with $63.3 billion spent by the Department of Defense and $49.4 billion spent by civil agencies. The agencies of the U.S. Intelligence Community that we serve represent an additional market. These numbers also exclude a large addressable market for our services and capabilities in the commercial and international markets where we have a modest but growing footprint.

***We have strong and longstanding relationships with a diverse group of clients at all levels of the U.S. government. During fiscal 2016, we derived 97% of our revenue from services under more than 5,100 contracts and task orders. The revenue was generated from contracts where the end client was an agency or department of the U.S. government***, including contracts where Booz Allen performed in either a prime or subcontract position, and regardless of the geographic location in which the work was performed. The single largest entity that we served in fiscal 2016 was the U.S. Army, which represented approximately 15% of our revenue in that period. We derived 90% of our revenue in fiscal 2016 from engagements for which we acted as the prime contractor.

(Emphases added.)

20.     The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating, in relevant part, that the 2016 10-K "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2016 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

21.     On July 27, 2016, Booz Allen filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q1 2017 10-Q"). For the quarter, Booz Allen reported net income of $67.82 million, or $0.45 per diluted share, on revenue of $1.42 billion, compared to net income of $64.31 million, or $0.43 per diluted share, on revenue of $1.35 billion for the same period in the prior year.

22.     In the Q1 2017 10-Q, Booz Allen stated, in part:

Through our dedication to our clients' missions, and a commitment to evolving our business to address client's needs, we have longstanding and deep relationships with our clients -- some more than 75 years. ***We support critical missions for a diverse base of federal government clients, including nearly all of the U.S. government's cabinet-level departments, and federal contract vehicles***, as well as increasingly for top-tier commercial and international clients. We support these clients by addressing complex and pressing challenges such as combating global terrorism, improving cyber capabilities, transforming the healthcare system, improving efficiency and managing change within the government. Our U.S. commercial clients are primarily in the financial services, healthcare and life sciences, energy, high-tech manufacturing, retail, and automotive industries. Our international clients are primarily in the Middle East, along with a new and growing presence in Southeast Asia.

. . .

**Sources of Revenue**

***Substantially all of our revenue is derived from services provided under contracts and task orders with the U.S. government***, primarily by our consulting staff and, to a lesser extent, our subcontractors. Funding for our contracts and task orders is generally linked to trends in budgets and spending across various U.S. government agencies and departments. We provide services under a large portfolio of contracts and contract vehicles to a broad client base, and we believe that our diversified contract and client base lessens potential volatility in our business; however, a reduction in the amount of services that we are contracted to provide to the U.S. government or any of our significant U.S. government clients could have a material adverse effect on our business and results of operations.

(Emphases added.)

23.     The Q1 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating, in relevant part, that the Q1 2017 10-Q "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [Q1 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

24.     On November 2, 2016, Booz Allen filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q2 2017 10-Q").  For the quarter, Booz Allen reported net income of

$62.93 million, or $0.41 per diluted share, on revenue of $1.39 billion, compared to net income of $56.22 million, or $0.37 per diluted share, on revenue of $1.32 billion for the same period in the prior year.

25.     In the Q2 2017 10-Q, Booz Allen stated, in part:

> Through our dedication to our clients' missions, and a commitment to evolving our business to address client's needs, we have longstanding and deep relationships with our clients -- some more than 75 years. ***We support critical missions for a diverse base of federal government clients, including nearly all of the U.S. government's cabinet-level departments, and federal contract vehicles***, as well as increasingly for top-tier commercial and international clients. We support these clients by addressing complex and pressing challenges such as combating global terrorism, improving cyber capabilities, transforming the healthcare system, improving efficiency and managing change within the government. Our U.S. commercial clients are primarily in the financial services, healthcare and life sciences, energy, high-tech manufacturing, retail, and automotive industries. Our international clients are primarily in the Middle East, along with a new and growing presence in Southeast Asia.
>
> . . .
>
> **Sources of Revenue**
>
> ***Substantially all of our revenue is derived from services provided under contracts and task orders with the U.S. government***, primarily by our consulting staff and, to a lesser extent, our subcontractors. Funding for our contracts and task orders is generally linked to trends in budgets and spending across various U.S. government agencies and departments. We provide services under a large portfolio of contracts and contract vehicles to a broad client base, and we believe that our diversified contract and client base lessens potential volatility in our business; however, a reduction in the amount of services that we are contracted to provide to the U.S. government or any of our significant U.S. government clients could have a material adverse effect on our business and results of operations.

(Emphases added.)

26.     The Q2 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating, in relevant part, that the Q2 2017 10-Q "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he

information contained in the [Q2 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     On January 30, 2017, Booz Allen filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended December 31, 2016 (the "Q3 2017 10-Q").  For the quarter, Booz Allen reported net income of $55.59 million, or $0.37 per diluted share, on revenue of $1.40 billion, compared to net income of $108.06 million, or $0.71 per diluted share, on revenue of $1.31 billion for the same period in the prior year.

28.     In the Q3 2017 10-Q, Booz Allen stated, in part:

Through our dedication to our clients' missions, and a commitment to evolving our business to address clients' needs, we have longstanding and deep relationships with our clients -- some more than 75 years. ***We support critical missions for a diverse base of federal government clients, including nearly all of the U.S. government's cabinet-level departments, and federal contract vehicles***, as well as increasingly for top-tier commercial and international clients. We support these clients by addressing complex and pressing challenges such as combating global terrorism, improving cyber capabilities, transforming the healthcare system, improving efficiency and managing change within the government. Our U.S. commercial clients are primarily in the financial services, healthcare and life sciences, energy, high-tech manufacturing, retail, and automotive industries. Our international clients are primarily in the Middle East, along with a new and growing presence in Southeast Asia.

. . .

**Sources of Revenue**

***Substantially all of our revenue is derived from services provided under contracts and task orders with the U.S. government***, primarily by our consulting staff and, to a lesser extent, our subcontractors. Funding for our contracts and task orders is generally linked to trends in budgets and spending across various U.S. government agencies and departments. We provide services under a large portfolio of contracts and contract vehicles to a broad client base, and we believe that our diversified contract and client base lessens potential volatility in our business; however, a reduction in the amount of services that we are contracted to provide to the U.S. government or any of our significant U.S. government clients could have a material adverse effect on our business and results of operations.

29.     The Q3 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating, in relevant part, that the Q3 2017 10-Q "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [Q3 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.     On May 22, 2017, Booz Allen filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended March 31, 2017 (the "2017 10-K"). For the quarter, Booz Allen reported net income of $66.25 million, or $0.44 per diluted share, on revenue of $1.58 billion, compared to net income of $65.52 million, or $0.43 per diluted share, on revenue of $1.42 billion for the same period in the prior year. For the fiscal year, Booz Allen reported net income of $252.49 million, or $1.67 per diluted share, on revenue of $5.80 billion, compared to net income of $294.09 million, or $1.94 per diluted share, on revenue of $5.41 billion for the prior fiscal year.

31.     In the 2017 10-K, Booz Allen stated, in part:

Through our dedication to our clients' missions, and a commitment to evolving our business to address client needs, we have longstanding and deep relationships with our clients, some more than 75 years. ***We support critical missions for a diverse base of federal government clients, including nearly all of the U.S. government's cabinet-level departments, as well as increasingly for top-tier commercial and international clients.*** We support these clients by helping them tackle their most complex and pressing challenges such as protecting soldiers in combat and supporting their families, advancing cyber capabilities, keeping our national infrastructure secure, enabling and enhancing digital services, transforming the healthcare system, and improving governmental efficiency to achieve better outcomes.

. . .

**Our Clients**

Booz Allen is committed to solving our clients' toughest challenges, and we work with a diverse base of public-and-private sector clients across a number of industries, in the U.S. and internationally.

Our clients call upon us to work on their hardest problems, such as delivering effective health care, protecting soldiers in combat and their families and keeping our national infrastructure secure. We are investing in markets, capabilities, and talent and are building new business models through strategic ventures, partnerships, and product offerings.

***Our government clients include substantially all of the cabinet-level departments of the U.S government.*** We serve commercial clients across all industries, including some of the largest organizations in critical infrastructure sectors, such as financial services, energy, healthcare, and manufacturing, and we have a thriving portfolio of international clients in the Middle East and Southeast Asia.

*A Large Addressable Market*

We believe that the U.S government is the world's largest consumer of management and technology consulting services. The U.S. government's budget for its fiscal year ended September 30, 2016 was close to $3.9 trillion, excluding authorizations from Overseas Contingency Operations and supplemental funding for the Department of Defense. Of this amount, approximately $1.2 trillion was for discretionary budget authority, including $631 billion for the Department of Defense and intelligence community and $563 billion for civil agencies. Based on data from the Federal Procurement Data System, approximately $473 billion of the U.S. government's fiscal year 2016 discretionary outlays were non-intelligence agency funding-related products and services procured from private contractors. We estimate that $119.6 billion of the spending directed towards private contractors in U.S. government fiscal year 2016 was for management, technology, and engineering services, with $67.2 billion spent by the Department of Defense and $52.4 billion spent by civil agencies. The agencies of the U.S. intelligence community that we serve represent an additional market. These numbers also exclude a large addressable market for our services and capabilities in the global commercial markets where we have a modest but growing footprint.

During Booz Allen's fiscal 2017:

- ***We derived 97% of our revenue from contracts where the end client was an agency or department of the U.S. government.***

- We delivered services under more than 4,820 contracts and task orders.

- We derived 91% of our revenue in fiscal 2017 from engagements for which we acted as the prime contractor.

11

- The single largest entity that we served in fiscal 2017 was the U.S. Army, which represented approximately 14% of our revenue in that period.

(Emphases added.)

32.     The 2017 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating, in relevant part, that the 2017 10-K "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

33.     The statements referenced in ¶¶ 18-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Booz Allen engaged in improper accounting practices in its contracts with the U.S. government; (ii) consequently, the Company's revenues derived from services provided to the U.S. government were inflated and unsustainable; (iii) discovery of the foregoing conduct would subject the Company to heightened regulatory scrutiny, potential criminal sanctions, and jeopardize its business relationship with the U.S. government; and (iv) as a result of the foregoing, Booz Allen's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

34.     On June 15, 2017, post-market, Booz Allen filed a Current Report on Form 8-K with the SEC. advising investors, in relevant part, as follows:

On June 7, 2017, Booz Allen Hamilton Inc. . . . a wholly owned subsidiary of Booz Allen Hamilton Holding Corporation, was informed that the U.S. Department of Justice is conducting a civil and criminal investigation relating to

12

certain elements of [its] cost accounting and indirect cost charging practices with the U.S. government.

35.     On this news, Booz Allen's share price fell $7.43, or 18.89%, to close at $31.90 on June 16, 2017.

36.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Booz Allen Securities during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Booz Allen Securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Booz Allen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Booz Allen;

- whether the Individual Defendants caused Booz Allen to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Booz Allen Securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

43.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Booz Allen Securities are traded in an efficient market;

- the Company's Securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's Securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Booz Allen Securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>**COUNT I**</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Booz Allen Securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Booz Allen securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Booz Allen securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Booz Allen's finances and business prospects.

50.     By virtue of their positions at Booz Allen, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

51.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Booz Allen, the Individual Defendants had knowledge of the details of Booz Allen's internal affairs.

52.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Booz Allen.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Booz Allen's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of Booz Allen securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Booz Allen's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Booz Allen Securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

53.     During the Class Period, Booz Allen Securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired Booz Allen Securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Booz Allen Securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Booz Allen Securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's Securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of Booz Allen, and conducted and participated, directly and indirectly, in the conduct of Booz Allen's business affairs.  Because of their senior positions, they knew the adverse non-public information about Booz Allen's misstatement of income and expenses and false financial statements.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Booz Allen's financial condition and results of operations, and to correct promptly any public statements issued by Booz Allen which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Booz Allen disseminated in the marketplace during the Class Period concerning Booz Allen's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Booz Allen to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Booz Allen within the meaning of Section 20(a) of the Exchange Act.  In this

capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Booz Allen securities.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of Booz Allen.  By reason of their senior management positions and/or being directors of Booz Allen, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Booz Allen to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Booz Allen and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Booz Allen.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 19, 2017

Respectfully submitted,

Elizabeth Aniskevich (SBN 81809)
**COHEN MILSTEIN SELLERS & TOLL
    PLLC**
Steven J. Toll (SBN 15300)
Daniel S. Sommers
Elizabeth Aniskevich (SBN 81809)
1100 New York Avenue, N.W.
East Tower, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
        dsommers@cohenmilstein.com
        eaniskevich@cohenmilstein.com

*Local Counsel for Plaintiff*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*